UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JOHN BECKMAN,

      Plaintiff,

v.                              Case No:  2:24-cv-585-JES-DNF

THE COLLIER COUNTY BOARD OF
COUNTY COMMISIONERS,

      Defendant.

_____

## OPINION AND ORDER

This matter comes before the Court on review of the Motion for Summary Judgment (Doc. #27) filed by Defendant Collier County Board of County Commissioners (the "County" or Defendant) on September 25, 2025. Plaintiff John Beckman ("Beckman" or Plaintiff) filed a Motion for Partial Summary Judgment (Doc. #28) on September 26, 2025. Both parties filed Responses to the respective motions on October 31, 2025. (Docs. ##31, 32.)  On November 14, 2025, both parties filed Replies to the Responses. (Docs. ##33, 34.)  For the reasons set forth below, Defendant's motion is granted, and Plaintiff's motion is denied.

## I.

Summary judgment is appropriate only when a movant shows that "there is no genuine dispute as to any material fact and the movant

is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when the evidence is such that a reasonable trier of fact could return a verdict for the non-moving party. McCreight v. AuburnBank, 117 F.4th 1322, 1329 (11th Cir. 2024) (citation omitted). A fact is "material" if it may affect the outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In ruling on a motion for summary judgment, a court views all evidence and draws all reasonable inferences in favor of the non-moving party. Scott v. Harris, 550 U.S. 372, 378 (2007); Tana v. Dantanna's, 611 F.3d 767, 772 (11th Cir. 2010).

## II.

Beckman began his employment with the County in 2006 as an Emergency Medical Technician. Beckman enjoyed a successful career with the County, and by 2016 had been promoted to Battalion Chief. At all relevant times Beckman had been able to perform the essential functions of his employment position with an accommodation for a gastrointestinal condition that substantially limits his major life activities. After multiple medications proved unsuccessful in managing the condition, on September 12, 2020, Beckman obtained a certification for medical marijuana use from the State of Florida.

The County has implemented a Drug Free Workplace policy pursuant to the Drug-Free Workplace Act, Fla. Stat. § 112.0455. See also Fla. Stat. § 440.102. The County maintains a County Manager Administrative Procedure ("CMA") mandating a work environment free from the unlawful use of controlled substances (including marijuana).

In October 2020 Beckman notified both Deputy Chief Tony Camps ("Deputy Chief Camps") and Chief Tabatha Butcher ("Chief Butcher") about his medical marijuana use certification. The details of the conversations are somewhat disputed, but the disputes are not material to any issue in the case. Beckman would periodically request and receive paid time off because of his medical condition. There were no issues about Beckman's work performance, and Beckman continued to use the medical marijuana on and off as needed. Beckman was only tested at work because of the random drug testing protocol, and until September 1, 2023, he had never tested positive for the presence of marijuana in his system.

On September 1, 2023, Beckman was selected for random drug testing as part of the County's testing protocol. The test came back positive for the presence of marijuana in Beckman's system, and he was immediately placed on unpaid administrative leave until completing counseling with a substance abuse professional and returning a negative drug screening.

Beckman was cleared to return to work after testing negative for illegal substances on October 17, 2023. By October 24, 2023, Beckman received and signed a Behavioral Action Plan ("BAP") which included: (1) a thirty-day suspension credited as time served, (2) demotion from Battalion Chief II to Paramedic II with an approximate 24.5% pay cut, (3) a six-month driving prohibition, (4) a six-month probationary period, and (5) ineligibility for promotional opportunities for up to twenty-four months. Beckman did not appeal this discipline, but was unwilling to accept the demotion in rank. Beckman submitted a letter of resignation on October 26, 2023, and terminated his employment with the County on November 9, 2023. Beckman characterizes this as a constructive discharge by the County.

After filing a formal Charge of Discrimination with the EEOC, Beckman received his Notice of Right to Sue on April 26, 2024. He filed the underlying Complaint (Doc. #1) on June 24, 2024, bringing claims under the Americans with Disability Act (ADA) for disability discrimination and retaliation (Counts I and III) and under the Florida Civil Rights Act (FCRA) for disability discrimination and retaliation (Counts II and IV).

## III.

The County seeks summary judgment on all four of Beckman's claims. Beckman seeks partial summary judgment on his two FCRA

-4-

claims.  All four claims implicate the interplay between federal and Florida law regarding the medical use of marijuana.  The Court therefore begins with a discussion of those respective laws.

**A. Federal Marijuana Use Laws**

Federal law makes the medical use of marijuana unlawful.  The context, however, is more complicated than the rule.

Under federal law it is a criminal offense to possess even a small amount of marijuana.  18 U.S.C. § 844(a).  Possession of small amounts of marijuana for personal use is subject to a civil penalty, 21 U.S.C. § 844(a), but a civil penalty may not be imposed on more than two separate occasions, 21 U.S.C. § 844(d), before criminal penalties are applicable.

Marijuana is currently categorized as a Schedule I drug under the Controlled Substances Act ("CSA").  21 C.F.R. § 1308.11(d)(23).  A Schedule I drug "(1) has a high potential for abuse; (2) has no currently accepted medical use in treatment in the United States; and (3) lacks accepted safety use under medical supervision." Florida Comm'r of Agric. v. Attorney Gen. of United States, 148 F.4th 1307, 1311 (11th Cir. 2025) (citing 21 U.S.C. § 812(b)(1)). The Drug Enforcement Administration (DEA) recently proposed a new rule to reclassify Marijuana as a Schedule III drug, which would allow use of marijuana for medical treatment.  See 21 U.S.C. § 812(b)(3).  The proposed new rule, however, is still working its

way through the administrative process. See In the Matter of Schedules of Controlled Substances: Proposed Rescheduling of Marijuana, DEA Docket No. 1362 (January 13, 2025). Recently, President Donald J. Trump has issued an Executive Order to speed up consideration of the reclassification of marijuana. Increasing Medical Marijuana and Cannabidiol Research, 90 FR 60541.

As a Florida appellate court has summarized:

> [F]ederal law provides that marijuana is not safe and has no use in medical treatment. The Controlled Substances Act ("CSA") classifies marijuana as a Schedule I substance. 21 U.S.C. § 812(c), Sched. I(c)(10). The CSA defines a Schedule I substance as one that has "a high potential for abuse," "has no currently accepted medical use in treatment in the United States," and lacks safe use even under medical supervision. 21 U.S.C. § 812(b)(1). Indeed, mere possession of marijuana is a federal crime everywhere in the United States. See 21 U.S.C. § 844(a) (providing criminal penalties for "simple possession" of marijuana); cf. 21 U.S.C. § 841(b)(1)(B)(vii), (D), (E)(4) (providing criminal penalties for distribution and possession with intent to distribute marijuana). Although the CSA requires periodic updates of the schedules of controlled substances, marijuana has remained a Schedule I drug since the CSA's enactment in 1970. See 21 U.S.C. § 812(a); Gonzales v. Raich, 545 U.S. 1, 15 n.23, 125 S.Ct. 2195, 162 L.Ed.2d 1 (2005).

Jones v. Grace Healthcare, 320 So. 3d 191, 193-94 (Fla. 1st DCA 2021). More recently, that court stated:

> Marijuana is a schedule I drug under the Controlled Substances Act. 21 U.S.C. § 812(c)(10). Under the Act, Schedule I drugs are deemed to have "no medicinal purpose for treatment in the United States, have a high potential for abuse, and lack acceptable safety measures even when used under proper medical supervision." 21 U.S.C. §

812(b)(1). Therefore, under the Act, there are no valid
prescriptions for marijuana. Because marijuana may not
be validly prescribed under federal law, mere possession
of marijuana is a felony under federal law. Gonzales v.
Raich, 545 U.S. 1, 14, 125 S.Ct. 2195, 162 L.Ed.2d 1
(2005).

Velez Ortiz v. Dep't of Corr., 368 So. 3d 33, 34–35 (Fla. 1st DCA

2023). In other words, "the use of marijuana for medical purposes,

even where sanctioned by state law, remains a violation of federal

law . . .." United States v. Cannon, 36 F.4th 496, 500 (3d Cir.

2022).

Nevertheless, while the possession and use of even small

amounts of marijuana remains unlawful, Congress has virtually

guaranteed that no person will be charged with possessing or using

marijuana when participating in a state medical marijuana program.

When Congress exercises its power to appropriate government funds

each year pursuant to its Article I powers,[1] such appropriation

acts are often accompanied by "riders" that limit how the money

may (or may not) be spent. See SEAN M. STIFF, CONG. RSCH. SERV.,

R46417, CONGRESS'S POWER OVER APPROPRIATIONS: CONSTITUTIONAL AND

STATUTORY PROVISIONS (2020). Every year since 2015 Congress has

included a budget rider amendment (commonly referred to as the

---

[1] Article I of the U.S. Constitution provides, in pertinent part,
that "[n]o Money shall be drawn from the Treasury, but in
Consequence of Appropriations made by Law." U.S. CONST. art. I, §
9, cl. 7.

"Rohrabacher-Farr Amendment") providing that "[n]one of the funds made available under this Act to the Department of Justice may be used" to prevent any state which has legalized medical marijuana "from implementing their own laws that authorize the use, distribution, possession, or cultivation of medical marijuana." See Consolidated and Further Continuing Appropriations Act, Pub. L. No. 113-235, § 538, 128 Stat. 2130, 2217 (2014); Florida Comm'r of Agric., 148 F.4th at 1312.   Federal courts have interpreted this rider to prohibit prosecution of individuals "who fully complied," United States v. McIntosh, 833 F.3d 1163, 1177 (9th Cir. 2016), or "substantially complied", United States v. Bilodeau, 24 F.4th 705, 715 (1st Cir. 2022), or "comply", United States v. Stacy, 156 F.4th 994, 1012 (10th Cir. 2025), with their respective State laws regulating medical marijuana use.

    As a result, ". . . Congress has precluded the Department of Justice (for now) from prosecuting crimes that Congress (for now) chooses to maintain on the books." Fried v. Garland, 640 F. Supp. 3d 1252, 1256 (N.D. Fla. 2022), vacated and remanded sub nom. Florida Comm'r of Agric., 148 F.4th 1307 (11th Cir. 2025).   This type of inconsistency had led Supreme Court Justice Clarence Thomas to observe that while "[o]nce comprehensive, the Federal Government's current approach is a half-in, half-out regime that simultaneously tolerates and forbids local use of marijuana. This

contradictory and unstable state of affairs strains basic principles of federalism and conceals traps for the unwary." Standing Akimbo, LLC v. United States, 141 S. Ct. 2236, 2236-37 (2021) (Thomas, J., concurring in denial of certiorari). Nonetheless, the Court ends where it began:  Federal law makes the medical use of marijuana unlawful.

The existence of the Florida medical marijuana law, discussed below, does not change Federal law.  The Florida constitutional amendment does not attempt to do so, providing only that medical use of marijuana "is not subject to criminal or civil liability or sanctions under Florida law."  Art. X, § 29(3), Fla. Const. (emphasis added.)  Nor could it, since Federal law prevails in this area.

> Even though some states—including Florida—permit the purchase, possession, and use of marijuana for medical purposes, federal law must prevail in circumstances such as this. We are bound by the United States Constitution to apply the CSA over a provision in the Florida Constitution to the contrary. As the federal constitution commands, the "Laws of the United States ... shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." Art. VI, U.S. Const. (emphasis supplied). We cannot reverse—as Jones would have us do—the JCC's order in reliance on an undisputed characterization of medical necessity that directly conflicts with clear federal law. Cf. Ledoux-Nottingham v. Downs, 210 So. 3d 1217, 1221 (Fla. 2017) (observing that when federal law conflicts with Florida law, federal law controls under the Supremacy Clause).

Jones, 320 So. 3d at 194.

**B. Florida Marijuana Use Laws**

Under Florida law, it is illegal to sell, manufacture, or deliver, or possess with intent to sell, manufacture, or deliver, a controlled substance. Fla. Stat. § 893.13(1)(a) (2008-present). Cannabis, the technical name for marijuana, is classified as a Schedule I controlled substance in Florida. Fla. Stat. § 893.03(1)(c)(7). Simple possession of marijuana remains a crime in Florida, constituting either a felony or misdemeanor depending on whether the amount is more or less than 20 grams. Fla. Stat. § 893.13(6)(b). See generally Wright-Johnson v. State, 405 So. 3d 501, 506 (Fla. 3d DCA 2025); Campbell v. State, 407 So. 3d 558, 561 (Fla. 2d DCA 2025).

A limited exception exists for the medical use of marijuana as the result of a 2016 voter-approved amendment to the Florida Constitution. This constitutional amendment mandated "the development of a carefully regulated system for providing access to marijuana for certain patients suffering from debilitating medical conditions." Florida Dep't of Health v. Florigrown, LLC, 317 So. 3d 1101, 1106 (Fla. 2021). Article X, § 29 of the Florida Constitution provides, in pertinent part, that "[t]he medical use of marijuana by a qualifying patient or caregiver in compliance with this section is not subject to criminal or civil liability or

sanctions under Florida law." Art. X, § 29(3), Fla. Const. The Amendment contemplates that the Florida Legislature may enact laws consistent with its provisions, Id. § 29(e) ("Nothing in this section shall limit the legislature from enacting laws consistent with this section") and that the Florida Department of Health "issue reasonable regulations necessary for the implementation and enforcement of" its provisions for the purpose of "ensur[ing] the availability and safe use of medical marijuana by qualifying patients." Id. § 29(d). See Florigrown, LLC, 317 So. 3d at 1106.

In 2017 the Florida legislature enacted Fla. Stat. § 381.986 (Medical use of marijuana) as the legislative framework to implement and regulate the constitutional amendment. Sanctuary Cannabis v. Florida Dep't of Health, 406 So. 3d 390, 392 (Fla. 1st DCA 2025). The Legislature amended the definition of "cannabis" to exclude medical marijuana. Id.; Williams v. State, 421 So. 3d 809, 816 (Fla. 2d DCA 2025). The statute imposed various limitations, including the requirements that the marijuana: consist of no more than certain, limited amounts; be "acquired from a medical marijuana treatment center"; be obtained pursuant to a "medical marijuana use registry identification card" issued by a "qualified physician"; and be administered in a location other than "in plain view of or in a place open to the general public; in a school bus, a vehicle, an aircraft, or a boat; or on the

grounds of a school." <u>See</u> <u>generally</u> Fla. Stat. § 381.986; <u>Wright-Johnson</u>, 405 So. 3d at 506.

Additionally, the Florida medical use of marijuana statute provides certain protections for employers. Section 381.986(15) protects an employer's right to maintain and enforce a drug-free workplace. <u>See</u> Fla. Stat. § 381.986(15)(a) ("This section does not limit the ability of an employer to establish, continue, or enforce a drug-free workplace program or policy."). Additionally, § 381.986(15)(c) clarifies that "[t]his section does not create a cause of action against an employer for wrongful discharge or discrimination." Fla. Stat. § 381.986(15)(c).

## IV.

The Court first discusses Beckman's two ADA claims. Beckman asserts that he was subjected to unlawful disability discrimination when his employer failed to accommodate his gastrointestinal condition by permitting him to use medical marijuana outside of work hours. Beckman also alleges that the County retaliated against him by subjecting him to discipline following protected disability disclosures.

The County argues that Beckman must first establish a prima facie case of discrimination and retaliation pursuant to the burden-shifting framework of <u>McDonnell Douglas v. Green</u>, 411 U.S. 792 (1973), and that Beckman has not done so. (Doc. #27, pp. 22-

23.)   Additionally, the County argues that even if Beckman had established a prima facie case for either ADA claim, he has not established that the stated reason for the employment action was a pretext for disability discrimination or retaliation. (Id., p. 27.) The County argues that it is therefore entitled to summary judgment as to both the ADA discrimination claim and the ADA retaliation claim.

### A.   Summary Judgment Procedure

First, a word about summary judgment procedure.  The County seems to suggest that failure to satisfy McDonnell Douglas ends the inquiry with summary judgment in its favor.  (Doc. #27, pp. 22-24.)  This would be incorrect.

An employee may establish his claims using direct or circumstantial evidence, or a combination of both.  Jefferson v. Sewon Am. Inc., 891 F.3d 911, 921 (11th Cir. 2018).  When utilizing circumstantial evidence, an employee may rely on the burden-shifting McDonnell Douglas framework, Akridge v. Alfa Ins. Companies, 93 F.4th 1181, 1191 (11th Cir. 2024), or if that fails, may establish a "convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." Smith v. Lockheed-Martin Corp., 644 F.3d 1321, 1327-28 (11th Cir. 2011) (internal quotation marks omitted) (footnote omitted).  The Eleventh Circuit has recently summarized

the McDonnell Douglas framework in employment discrimination and retaliation cases as follows:

> There, the [Supreme] Court introduced a three-part evidentiary burden shifting framework:
>
> 1. First, the plaintiff demonstrates a prima facie case, which may be done by showing: (i) the plaintiff is in a protected group; (ii) the plaintiff was well qualified; (iii) the plaintiff suffered an adverse employment action; and (iv) the plaintiff was treated less favorably than similarly situated employees outside of the plaintiff's protected group.
>
> 2. Second, the burden shifts to the employer to articulate some legitimate, nondiscriminatory reason for the adverse action.
>
> 3. Third, if the employer provides an adequate reason, the plaintiff has the opportunity to demonstrate that the employer's proffered rationale is pretextual.
>
> Retaliation claims (as opposed to direct discrimination claims) follow the same framework, but the prima facie case is modified. There, a plaintiff must show: (i) that she engaged in a protected activity, like filing a complaint for discrimination; (ii) that she suffered a material adverse action; and (iii) that there was a causal connection between the protected activity and the adverse action.

Ismael, 161 F. 4th at 759 (internal citations omitted.)

If plaintiffs cannot satisfy the McDonnell Douglas test, "the inquiry does not end. Rather, a district court must turn to evaluate the evidence before it, applying the duly promulgated Rule 56 summary judgment standard." Id. at 764. "[A] plaintiff who cannot establish the McDonnell Douglas prima facie case is

entitled to a full review under the convincing mosaic standard."

Id. at 761.  Under this standard,

> [a]s in other contexts, a plaintiff may avoid summary judgment by presenting a wide range of circumstantial evidence. Such evidence may include "(1) suspicious timing, ambiguous statements ..., and other bits and pieces from which an inference of discriminatory intent might be drawn, (2) systematically better treatment of similarly situated employees, and (3) that the employer's justification is pretextual."

Id. at 760 (citations omitted.)

### B. ADA Discrimination

The ADA prohibits covered employers from "discriminat[ing] against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a).  To establish a prima facie case of disability discrimination under the ADA, a plaintiff must show that he (1) had a disability, (2) was a qualified individual, and (3) was subjected to unlawful discrimination "on the basis of disability." Beasley v. O'Reilly Auto Parts, 69 F.4th 744, 754 (11th Cir. 2023). The County does not contest that Beckman had a disability but argues that he has not established the remaining two elements of a prima facie discrimination claim.

### (1) Qualified Individual

The County asserts that "no accommodation was due because Beckman was not a qualified individual with a disability under the ADA." (Doc. #27, p. 22.)  The County argues that Beckman is not

a qualified individual within the meaning of 42 U.S.C. § 12111(8)
because he was an employee "who is currently engaging in the
illegal use of drugs," and the County imposed the discipline on
the basis of such drug use. (Id., p. 23.)

The ADA defines a qualified individual as one "who, with or
without reasonable accommodation, can perform the essential
functions of the employment position." 42 U.S.C. § 12111(8).
Beckman must prove he was a qualified individual "at the time of
the County's alleged disability-based discrimination." Stanley v.
City of Sanford, 606 U.S. ----, 145 S. Ct. 2058, 2071 (2025).

A person illegally using drugs is excluded from the definition
of a "qualified individual." See 42 U.S.C. § 12114(a) ("[A]
qualified individual with a disability shall not include any
employee or applicant who is currently engaging in the illegal use
of drugs, when the covered entity acts on the basis of such drug
use.") It is not disputed that Beckman was using marijuana
pursuant to his Florida certification. This constituted illegal
use of drugs under federal law. Beckman was disciplined because
he tested positive for marijuana use. Unless there is an
applicable exception, this would exclude Beckman from being a
qualified individual.

There is an exception to this definitional exclusion: The
"illegal use of drugs . . . does not include the use of a drug

taken under supervision by a licensed health care professional, or other uses authorized by the Controlled Substance Act." 42 U.S.C. § 12110(d)(1). Beckman's use was clearly not an "other use[]" authorized by the Controlled Substance Act. Additionally, persuasive federal case law holds that the use of medical marijuana pursuant to a state-authorized program is not drug usage "taken under supervision by a licensed health care professional." <u>James v. City of Costa Mesa</u>, 700 F.3d 394, 403 (9th Cir. 2012) ("doctor-supervised marijuana use is an illegal use of drugs not covered by the ADA's supervised use exception."); <u>Anderson v. Diamondback Investment Group</u>, 117 F.4th 165, 177-80 (4th Cir. 2024) (employer not liable for failure to accommodate under the ADA where employee was terminated based on a positive drug test for marijuana); <u>Eccleston v. City of Waterbury</u>, No. 3:19-cv-1614, 2021 WL 1090754, at *4 (D. Conn. Mar. 15, 2021) ("I agree with the courts that have reasoned that even physician-supervised medical marijuana use does not fit within the supervised-use exception identified in the ADA. To read otherwise would place it in direct tension with the clear provisions of the CSA[.]"); <u>Steele v. Stallion Rockies, Ltd.</u>, 106 F. Supp. 3d 1205, 1212 (D. Colo. 2015) (collecting cases). <u>See also</u> <u>Velez Ortiz v. Dep't of Corr.</u>, 368 So. 3d 33, 35 (Fla. 1st DCA 2023) (there are no valid prescriptions for marijuana under Controlled Substance Act.)

Beckman argues that he was unquestionably a qualified individual under Florida law because "[w]hen conduct is constitutionally protected under state law, federal classification cannot eliminate state civil rights protections." (Doc. #31, p. 14.) Beckman's argument is wrong. See Jones, 320 So. 3d at 194.

The undisputed facts demonstrate that Beckman received an adverse employment action after testing positive for the presence of marijuana during a random drug screening as part of the County's testing protocol. Beckman's use of marijuana, even pursuant to his Florida certificate, was illegal under federal law, and the statutory exclusion is not satisfied by the Florida medical marijuana program. Accordingly, Beckman was not a qualified individual with a disability under the ADA.

### (2) Causation

The County also challenges Beckman's showing of the third prima facia element – causation between his disability and the employment action. (Doc. #27, pp. 25-27.) Beckman asserts that his disabilities were "gastro-intestinal impairments that affect the major life activities of digestion and working." (Doc. #1, ¶ 9.) Beckman further asserts that his disabilities "are the basis for [the County's] discriminatory employment practices toward him" (id., ¶ 14) and that the County discriminated against him "because of his disabilities." (Id., ¶ 22.)

The ADA imposes a "but-for" causation standard — that is, an adverse employment action would not have occurred but for the plaintiff's disability. <u>Akridge v. Alfa Ins. Companies</u>, 93 F.4th 1181, 1192 (11th Cir. 2024). As the County correctly argues, there is no evidence that Beckman was disciplined because of his medical condition. None of Beckman's asserted causation evidence (Doc. #31, pp. 15-17) goes to his gastrointestinal disability, but rather goes to his use of marijuana. Beckman was disciplined for using marijuana as his remedy-of-choice in violation of the County's Drug Free Work policy and federal law. <u>See Stewart v. Happy Herman's Cheshire Bridge, Inc.</u>, 117 F.3d 1278, 1285 (11th Cir. 1997) (holding that an employer need only provide a reasonable accommodation to its disabled employee, not the employee's accommodation of choice). Accordingly, Beckman has failed to establish the causation element.

### (3) Legitimate, Non-Pretextual Reason for Action

The County argues that even if Beckman could establish all the prima facie case elements, he has not proven that the reason for its employment action was unlawful disability discrimination (or retaliation). (Doc. #27, pp. 27-30.) The County asserts it imposed discipline on Beckman because he failed a drug test in violation of the County's established policy and there is no

evidence that this reason was a pretext for disability discrimination.

Beckman responds that the proffered reasons for the BAP discipline were "pure pretext" because (1) Chief Butcher testified his discipline was more severe than it should have been; (2) the County treated him differently than another employee; and (3) the County's policy provided for discretion, yet the County failed to exercise it for Beckman.  (Doc. #31, pp. 15-18.)  None of these factors would allow a reasonable jury to find pretext.

An employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason." Nix v. WLCY Radio/Rahall Commc'ns, 738 F.2d 1181, 1187 (11th Cir. 1984), abrogated on other grounds by Lewis, 918 F.3d 1213. "Federal courts 'do not sit as a super-personnel department that reexamines an entity's business decisions. No matter how medieval a firm's practices, no matter how high-handed its decisional process, no matter how mistaken the firm's managers, the ADEA does not interfere. Rather our inquiry is limited to whether the employer gave an honest explanation of its behavior.'" Chapman v. AI Transp., 229 F.3d 1012, 1030 (11th Cir. 2000) (citations omitted.)

The Chief's personal view of the severity of punishment also
does not tend to establish that the reason for termination was
plaintiff's disability, rather than his marijuana use.  Indeed,
the record establishes that plaintiff's discipline was more
lenient than typical, since the employment of 22 of 24 persons who
had tested positive for drugs while employed by the County was
terminated.  Assuming the County had discretion, the failure to
exercise that discretion in favor of plaintiff is not an indication
that plaintiff's physical ailment was the real reason.  The Court
concludes that even if plaintiff had established (1) that he was
a qualified individual and (2) the causation element, he has made
no showing from which a reasonable jury could find pretext.

### (4) Failure to Provide Reasonable Accommodation

The Complaint alleges that with a reasonable accommodation
Beckman could have performed the essential functions of his job.
(Doc. #1, ¶ 19.)  Beckman testified that the accommodation he was
referring to was continued use of medical marijuana.  (Doc. #24-
1, pp. 67-68.)  The County argues that to the extent Beckman is
pursuing the aspect of his discrimination claim involving failure
to accommodate, it too is subject to summary judgment. (Doc. #27,
pp. 31-32.)

An employer's failure to reasonably accommodate a disabled
individual is itself disability discrimination. Holly v. Clairson

Indus., LLC, 492 F.3d 1247, 1262 (11th Cir. 2007).  An employee is subjected to unlawful disability discrimination when the employer fails to provide "reasonable accommodations" for the disability unless doing so would impose an undue hardship on the employer. 42 U.S.C. § 12112(b)(5)(A); Beasley, 69 F.4th at 754. If the plaintiff establishes that he was denied reasonable accommodation, the burden shifts to the "employer . . . to show undue hardship." Earl v. Mervyns, Inc., 207 F.3d 1361, 1367 (11th Cir. 2000).  An employer need not "accommodate an employee in any manner in which that employee desires." Happy Herman's Cheshire Bridge, Inc., 117 F.3d at 1285 (citation omitted). Rather, an employer meets its obligations under the ADA if it provides some reasonable accommodation, regardless of whether it is "the accommodation of [the employee's] choice." Id. at 1286 (citation omitted).

An employer's duty to provide a reasonable accommodation is not triggered unless a specific demand for an accommodation has been made. Id. To "trigger an employer's accommodation duties, a disabled employee need only identify a statutory disability and explain generally how a particular accommodation would assist [him]." Owens v. Governor's Off. of Student Achievement, 52 F.4th 1327, 1336 (11th Cir. 2022). The employee has the burden of identifying an accommodation and demonstrating that it is

reasonable.  Frazier-White v. Gee, 818 F.3d 1249, 1255 (11th Cir. 2016).

The County argues that Beckman never requested use of medical marijuana as an accommodation, and in any event, it would have been illegal and therefore not reasonable.  (Doc. #27, pp. 31-32.)  Beckman testified in deposition that he requested, and was allowed to take, time off to attend to his medical condition. He further testified that he never asked the County for any other accommodation.  However, Beckman has also identified conduct from which it is reasonable to infer he was requesting to use marijuana to obtain relief from his disability.  (Doc. #31, pp. 18-19.) Beckman states that he made the following disclosures with regard to his medical marijuana usage:  In October 2020, Beckman "[n]otified Chief Camps of [his] medical issue getting worse and having to use Medical Marijuana as treatment after multiple other medications were not working."  In April of 2021, he "[a]sked Chief Camps if [he] could turn in [his medical marijuana certification] to be upfront of the situation."  Finally, in September 2022 he ". . . called Chief Butcher and let her know of [his medical marijuana certification].  [He] explained that [he] had a [medical marijuana] card and prescription for the medication as well."  (Doc. #31, p. 18.)

There is no "precise form" that a request for accommodation must take.  Instead, the "circumstances must at least be sufficient to cause a reasonable [defendant] to make appropriate inquiries about the possible need for an accommodation." Hunt v. Aimco Props., L.P., 814 F.3d 1213, 1226 (11th Cir. 2016).  Given the summary judgment standard, this is sufficient to show Beckman did make a request for accommodation.

But even construing this conduct as being a requested accommodation to allow the use of marijuana, it was not reasonable under the ADA because medical marijuana use was and still is illegal under federal law.  Accordingly, any failure to accommodate claim based on the underlying facts fails as a matter of law.

**(5)   Individual Assessment Under the ADA**

Beckman asserts that the County discriminated against him by failing to individually assess whether he could presently perform the essential aspects of his job while using state-authorized medical marijuana.  (Doc. #31, pp. 20-22.)  But no individualized assessment is required to determine if an employee is able to safely function while being afforded an unreasonable accommodation.

Beckman relies on a non-binding decision which allowed employment discrimination claims where the employee was discharged based on possible side effects of certain anxiety medications

-24-

without making individualized assessments of whether the individual was able to perform his or her job.  See Haynes v. City of Montgomery, No. 2:06CV1093WKW, 2008 WL 4495711, at *3 (M.D. Ala. Oct. 6, 2008), aff'd sub nom. Haynes v. City of Montgomery, Ala., 344 F. App'x 519 (11th Cir. 2009).  However, the facts in this case differ substantially from those in Haynes.  The medications used by the employee in Haynes were not Schedule I substances under the CSA; marijuana, even under the supervision of a clinical physician, is a Schedule I substance and its use is illegal under federal law.  No individualized assessment was authorized or required when the requested accommodation was to use an illegal substance even if the person can function without side effects.

### (6)  Interactive Process Under ADA

Beckman asserts that even if there are no protections for medical marijuana users under the ADA, the County was nevertheless required to engage in a good faith interactive process with regard to his disability disclosures.  (Doc # 31, p. 23.)  While for summary judgment purposes Beckman is deemed to have made the accommodation request, the requested accommodation was still illegal under federal law.  Accordingly, there was nothing to interact about.  The employer was simply unable to change federal law and allow an employee to use a substance which federal law

forbade.  The Court grants summary judgment in favor of the County
on Beckman's claim for disability discrimination under the ADA.

### (7) Convincing Mosaic Alternative

While the record establishes Beckman has failed to establish
two of the three prima facie elements, the Court must consider if
there was other evidence which would satisfy Beckman's burden and
avoid summary judgment.  A review of the record establishes that
there is not a convincing mosaic of evidence which would allow a
reasonable jury to find either disability discrimination or
disability retaliation.

### C. ADA Retaliation Claim

Beckman asserts a claim for retaliation because of protected
activity, which he identifies as his "request for reasonable
accommodation."  (Doc. #1, ¶¶ 46, 47, 55, 56.)  The County seeks
summary judgment on this ADA retaliation claim.

The ADA prohibits covered employers from retaliating against
an employee who "has opposed any act or practice made unlawful by
this Act or because such individual made a charge, testified,
assisted, or participated in any manner in an investigation,
proceeding, or hearing under this Act."  42 U.S.C. § 12203(a).
Claims for retaliation are evaluated under McDonnel Douglas
framework.  Tolar v. Bradley Arant Boult Commings, LLP, 997 F.3d
1280, 1289 (11th Cir. 2021).  To establish a prima facie claim for

retaliation, a plaintiff must establish (1) that he engaged in a statutorily protected activity or expression, (2) that he suffered an adverse employment action, and (3) that there exists a causal connection between the protected acts and the adverse employment action. Batson v. Salvation Army, 897 F.3d 1320, 1327 (11th Cir. 2018).

A plaintiff engages in a statutorily protected activity by making requests for accommodation under the ADA when he has a good faith reasonable belief that he is entitled to those accommodations. Monroe v. Fla. Dep't of Corr., 793 F. App'x 924, 928 (11th Cir. 2019). To prove a causal connection for a retaliation claim, a plaintiff need only demonstrate "that the protected activity and the adverse action were not wholly unrelated." Shotz v. City of Plantation, Fla., 344 F.3d 1161, 1180 n.30 (11th Cir. 2003) (quotation marks and emphasis omitted). One way of doing this is by showing a close temporal proximity between the employer's discovery of the protected activity and the adverse action. Higdon v. Jackson, 393 F.3d 1211, 1220 (11th Cir. 2004). Temporal proximity must be "very close," id. (quotation marks omitted); a three-to-four-month delay is too long, Thomas v. Cooper Lighting, Inc., 506 F.3d 1361, 1364 (11th Cir. 2007), while a one-month gap may satisfy the test, Donnellon v. Fruehauf Corp., 794 F.2d 598, 601 (11th Cir. 1986).

The County argues that Beckman cannot establish a retaliation claim because he did not engage in protected activity, the use of marijuana remained illegal, and the reason for the discipline was not false or pretextual.  Beckman responds that he made requests for over three years, and points to the timing and severity of the discipline after testing to support his retaliation claim.

Despite Beckman's testimony that he did not request any accommodation other than occasional time off, which was granted, the Court has found that for summary judgment purposes his conduct constitutes an implicit request for the use of medical marijuana. The record shows that Beckman's disability disclosures occurred in October 2020, April 2021, and September 2022.  Those implicit requests were denied.

There is no evidence supporting Beckman's theory that he was retaliated against for making the request for the accommodation. Indeed, under his theory Beckman's employment continued for years after he made the implicit requests.  However, Beckman did not receive and sign the BAP until October 24, 2023.  The elapsed time between the protected activity and the adverse action is, on its own, far too remote to support an inference that the County's decision was motivated by Beckman's protected activity.  See Gallimore v. City of Opa-Locka, Florida, No. 23-12241, 2025 WL 2237313, at *4 (11th Cir. Aug. 6, 2025) ("While 'an employee's

termination within days -- or at the most within two weeks -- of [her] protected activity can be circumstantial evidence of a causal connection between the two,' a gap of multiple months, in the absence of some other evidence of retaliation, is too large a temporal gap." (citing Jefferson v. Sewon Am., Inc., 891 F.3d 911, 926 (11th Cir. 2018)). While Beckman counts from the drug test, this was not a protected disclosure.

It was not the requests for an accommodation which led to his discipline, but Beckman's continued use of an illegal drug. There is no evidence that the implicit requests for accommodation were in any way related to the suspension, demotion, and other disciplinary actions outlined in the BAP. "To establish a causal connection, a plaintiff must show that the relevant decisionmaker was aware of the protected conduct, and that the protected activity and adverse actions were not wholly unrelated." Kidd v. Mando Am. Corp., 731 F.3d 1196, 1211 (11th Cir. 2013) (citation and quotations omitted). "The burden of causation can be met by showing close temporal proximity between the statutorily protected activity and the adverse employment action." Thomas v. Cooper Lighting, Inc., 506 F.3d 1361, 1364 (11th Cir. 2007). However, "in the absence of other evidence tending to show causation, if there is a substantial delay between the protected expression and

the adverse action, the complaint of retaliation fails as a matter of law." Id.

The evidence before the Court indicates that the County never subjected Beckman to any "reasonable suspicion" drug screenings (as it was permitted to do by its Drug Free Workplace policy). Instead, as Beckman conceded in his deposition, he was only subjected to random drug screenings during his tenure with the County. (Doc. #24-1, pp. 28-34.) The Court finds the temporal gap between Beckman's disclosures and the adverse employment action fatal to the element of causation. Accordingly, the Court grants the County's Motion for Summary Judgment as to Beckman's ADA claim for retaliation.

**V.**

The FCRA forbids employers from "discriminat[ing] against any individual . . . because of such individual's . . . handicap." Fla. Stat. § 760.10(1)(a). "Florida courts construe the Florida Civil Rights Act in conformity with the federal Americans with Disabilities Act [("ADA")]." Ring v. Boca Ciega Yacht Club Inc., 4 F.4th 1149, 1155 (11th Cir. 2021) (quotation marks and brackets omitted). See Abadi v. Walt Disney World Parks & Resorts, 338 So. 3d 1101, 1104 (Fla. 1st DCA 2022). This includes situations where the language is similar but not identical. Ring, 4 F.4th at 1156. The FCRA is also analyzed under the same framework as the ADA.

Holly v. Clairson Indus., L.L.C., 492 F.3d 1247, 1255 (11th Cir.
2007); Samson v. Fed. Exp. Corp., 746 F.3d 1196, 1200 n. 2 (11th
Cir. 2014).  Similarly, retaliation claims brought under the FCRA
are analyzed pursuant to federal case law.  Carter v. Health Mgmt.
Associates, 989 So. 2d 1258, 1262 (Fla. 2d DCA 2008).

Because the Florida Civil Rights Act does not define the term
"handicap," Florida courts look to the ADA's definition of a
"disability." Byrd v. BT Foods, Inc., 948 So. 2d 921, 926 (Fla.
DCA 2007) (internal quotation marks omitted) (interpreting
"handicap" in the FCRA in the light of the definition of
"disability" in the ADA); Ring, 4 F.4th at 1155-56.  The question
becomes whether the Florida medical marijuana constitutional
amendment and statute change the ADA analysis when addressing
marijuana under the FCRA.

Beckman argues that he is unquestionably a qualified
individual under Florida law because the Florida Constitution
explicitly protects the medical use of marijuana by a qualifying
patient or caregiver.  (Doc. #31, p. 2.)  Beckman relies heavily
on the Circuit Court of Hillsborough County's decision in Giambrone
v. Hillsborough County, No. 20-CA-4719 (Fla. 13th Cir. Ct. Dec.
10, 2024), which found that medical marijuana use was protected
under the FCRA in light of Article X, § 29 of the Florida
Constitution and Fla. Stat. § 381.986.  That decision is currently

on appeal, and in any event, state trial court decisions do not bind federal courts as a final expression of state law. <u>See</u> <u>North Shore Med. Center, Inc. v. Cigna Health and Life Ins. Co.</u>, 68 F.4th 1241, 1244 (11th Cir. 2023).

The Court is not persuaded by <u>Giambrone</u>. Florida law is clear that the FCRA follows federal law as set forth in the ADA, and that law still classifies marijuana as an unlawful drug. Additionally, Florida's medical marijuana statutes specifically protect an employer's right to maintain and enforce a drug-free workplace. <u>See</u> Fla. Stat. § 381.986(15)(a) ("This section does not limit the ability of an employer to establish, continue, or enforce a drug-free workplace program or policy."); Fla. Stat. § 381.986(15)(c) ("[t]his section does not create a cause of action against an employer for wrongful discharge or discrimination.") The County's motion for summary judgment as to the two FCRA claims is granted.

Accordingly, it is now

**ORDERED:**

1. Defendant Collier County's Motion for Summary Judgment (Doc. #27) is **GRANTED.**

2. Plaintiff John Beckman's Motion for Summary Judgment is **DENIED.**

3. The Clerk shall enter judgment in favor of Defendant Collier County Board of County Commissioners as to each count and against Plaintiff John Beckman, who shall take nothing.  The Clerk is further directed to terminate all deadlines and to close the file.

**DONE AND ORDERED** at Fort Myers, Florida, this __13th__ day of January 2026.


_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Parties of record